Milligan, J.,
delivered the opinion of the Court.
This is an application to the presiding Judge of the Ninth Judicial Circuit, for a mandamus to compel W. A. Glenn, Judge of the County Court of Davidson *63 County, to order, in Ms official capacity, a certified copy of the last Will and Testament of Cynthia P. Williams, to be recorded, in order that letters testamentary may issue thereon.
The Will is set out in the petition, and bears date the 19th of July, 1865, and purports to convey, absolutely, to the relator, who was the husband of the testator, and is the executor named in the Will, all the property, both real and personal, of which she died possessed, or in, or to, which she had any right, title or interest, at her death. On the 30th of July, 1866, the original Will was proven in common form, before the Register of Wills, in the City and County of Philadelphia, by two of the subscribing witnesses in person, and by proof of the handwriting of the third, and admitted to record according to all the” forms of law in the State of Pennsylvania; and an official copy thereof,' duly certified under the Act of Congress, approved May the 26th, 1790, was presented in the County Court of Davidson County, as before stated, for record.
The relator alleges, that the City and County of Philadelphia, was the last place of the testator’s residence, and her domicil at the time of her death; and that said Will contains certain devises of real estate in the State of Tennessee, and elsewhere; also, bequests of a large amount of debts, choses in action, etc., against, and in the hands of, parties resident in the County of Davidson, and State of Tennessee, which the excutor cannot collect without letters testamentary granted in said State.
*64 It further appears in the petition, that the application to have this Will admitted to record in Tennessee, was made by the executor in person, ' on the 29th of June, 1867, which was refused for the following reasons, as set out in exhibit “A,” to the petition:
“This day, Thomas Williams appeared in open Court, and presented a duly certified copy of what purported to be the last Will and Testament of Cynthia P. Wil" liams, deceased; and which purports to have been duly admitted to probate in the City and County of Philadelphia, and State of Pennsylvania; but the County Court being of opinion, that it was necessary to prove the same as an original Will in 'the State of Tennessee, doth refuse said application to admit said certified copy to record; and also refused to grant letters testamentary to said Williams, as executor of said Will.”
This order was not entered upon the records of the County Court, but, as it seems, superinduced the application for a mandamus, to compel the County Judge to receive and admit to record the certified copy of the Will in question. The Circuit Judge issued an alternative mandamus', and, upon motion, admitted Narcissa P. Saunders and John E. Saunders, who are the brother and sister of the testator, and claim an interest, as next of kin, in the real and personal estate included in her Will, to appear and answer the petition. The County Judge, and John E. and Narcissa P. Saunders, answer separately. The former admits, substantially, the allegations in the petition, except as to the domi-cil of the testatrix at the time of her death. But *65 assigns, as a reason for not admitting tbe Will to record, that, prior to the present application, in 1866, the relator had presented a certified copy of said Will to the County Court of Davidson County for record, when his co-defendants, John E. and Narcissa P. Saunders, as next of kin to the testatrix, appeared, and contested the validity of the Will, which was, under the forms of law, certified to the Circuit Court of said county, to be tried under an issue of devisavel vel non; and that, at the time of its second presentation, on the 29th of June, 1867, he had no oficial knowledge that that issue had been found in favor of the validity of the Will. On the contrary, as it afterwards transpired, the issue had been found before the second presentation of the Will to the County Court, by a jury of the County, against the validity of the Will; and, therefore, he did not feel authorized to admit the copy to record, and issue letters testamentary thereon.
The other defendants, John E, and Narcissa P. Saunders, answered jointly, and claim, as before shown, to be the brother and sister of the testatrix; and allege, that she was born and raised in Tennessee, and that her entire estate, except some lands in Mississippi and her personal apparel, jewels, paintings, etc., at her death, was situated in the State of Tennessee. She married in May, 1865, and in the following June, her husband, the relator, made and caused to be proven and registered, in the County of Davidson, a deed of settlement upon his wife, the testatrix, whereby he conveyed all the real and personal estate, moneys, choses n action, of every kind and description, to which she *66 was, prior to ber marriage, or to wbicb she might thereafter, become entitled, by gift, devise, or inheritance, from all persons whatsoever, except himself, to the sole and separate use of his said wife, free from the failure, debts, contracts or liabilities of himself, or those claiming through or under him, with an unlimited power of use and disposition.
The Will, as it appears, was made in Tennessee, with the full assent and approval of the relator;' and soon thereafter, he and the testatrix visited Philadelphia, the residence of the parents of the husband; and while there, she gave birth to a child, and shortly thereafter, died — the child having died before its mother.
The defendants, John E. and Narcissa P. Saunders, rely on the verdict of the jury and judgment of the Circuit Court of Davidson County, setting aside the Will in question; and deny that Philadelphia was the fixed residence and domicil of the testatrix at the time of her death.
The proof shows, that the relator, at the time of his marriage, belonged to the United States Army, and that- he had no fixed place of residence, except his father’s house in Philadelphia, where the testatrix died. After his marriage, he frequently spoke of fixing his residence in Tennessee; but, shortly before his wife’s death, both he and his wife are shown to have been looking for suitable property to purchase in the city of Philadelphia, as a residence and permanent home.
Under this state of facts, the Court, upon motion, dismissed the petition, and refused a peremptory man- *67 damns; from which the defendants appealed in error to this Court.
The case has been argued with great zeal and much ability on both sides; and the questions involved are somewhat novel in this State, but not altogether without the light of authority. The question most elaborately discussed, and upon which the real merits of the case rest, arises out of the effect to be given to the probate of the Will in the State of Pennsylvania. And no serious difficulty would be presented upon this question, were it not for the peculiar phraséology of our statute, providing for the probate of Wills executed in other States. By our Code, it provides, that: “Wills executed in other States, or in any of the Territories, or in the District of Columbia, shall be proved according to the laws of this State, and certified in the manner prescribed by the Act of Congress.
“A copy of a Will so certified, shall be registered in the county where the land lies, and a copy from the books of the register, duly certified, shall be evidence.
“And where the last Will and Testament of any person deceased, is proved in a Court of any State or Territory of the United States, or before the Mayor of any city, any person interested may present a copy thereof, duly authenticated, to the County Court of any county in the State where the land or estate devised, or disposed of by the Will, is situated; and, thereupon, such Court may order the same to be filed and recorded; and said copy, when so recorded, shall have the same force and effect as if the original had been exe *68 >cuted in this State, and proved and allowed in the 'Courts of this State.
“And such Will, if proved according to the laws of this State as to Wills made and executed within the "limits of this State, shall be sufficient to pass lands and other estate:” See sections 2182, 2183, 2184, 2185.
Sections .-2186 and 218T, provide for the different manner of -authenticating Wills executed beyond the limr its of the iState, when proven before a Court, or the Mayor of any city or corporation; and section 2188, declares, “Such - copy so authenticated, or a copy thereof, when recorded and certified by the Clerk of the Court in this State -where the same is recorded, shall be evidence.”
Immediately following this section it is provided: “Where there shall be goods and chattels in this State, to be administered under such Will, the executors, or some one of them, may -qualify as such; and they shall give bond, with sureties, as required in cases where the Will was made within the limits of this State, and be subject to be proceeded against as in other cases. And persons interested to contest the validity of such Will, may do so in the same manner as though it had been originally presented for probate in said Court:” Sections 2189, 2190.
These provisions of the Code are drawn from the Act of 1823, chap. 31, and are in substance and effect, the same. Both Acts are involved in an obscurity, scarcely capable of an intelligent, construction. No clear distinction is recognized between Wills of person *69 alty or movables, and Wills of immovables, or real property; nor is it declared, whether the foreign probate of a Will shall be prima facie evidence of its validity, or whether the Will, when presented for record here, shall be proven de novo. It is declared to be open to contest in the same manner as if it had been orignally offered for probate here. If this be so, and the burden of re-probating such a Will, is thrown upon the plaintiff, how is it to be done if the law of the State where it is executed is different from the law of our State, as to the capacity of the testator to make a Will, and as to formalities of execution? Cases might be imagined, upon this construction of the statute, that would involve much difficulty, if not render the Act wholly impracticable.
By the common law, there is a well defined distinction, between Wills of personalty or movables, and Wills of real ' or immovable property. In the former case, the law of the actual domicil of the testator is to govern; and if the Will is void by that law, it is a nullity everywhere, though executed' with the formalities required by the law of the place, where the property is locally situated. There is, says Mr. Greenleaf, in his valuable work on evidence, vol. 2, sec. 668, “No difference in this respect, between cases of successors by testament, and by intestacy, both being alike governed by the rule mobilia perso-nam sequenter.” Story’s Confl. Laws, sec. 467, 469; Stanley vs. Barnes, 8 Hagg. Eccl. R., 373; 4 Greenl., 134; Vattel’s Laws of Nations, B. 2, ch. 8, sec. 110, *70 111; 4 Kent’s, Com., 513; 1 Garman on Wills, 2 to 6, and notes.
But in regard to Wills of immovable or real property, it appears to be equally well established, that tbe law of the place where the property is locally situated, is to govern, as to the capacity or incapacity of the testator, the extent of his power to dispose of his property, and the forms and solemnities, to give the Will its due attestation and effect: Story’s Confl. Law, sec. 474, and authorities there cited; 1 Garman on Wills 1, 2, and Perkins’ notes; 4 Kent’s Com., 513.
In England, the distinction between Wills of personal property, and Wills of real property, has been constantly maintained. In fact, the Ecclesiastical Courts, until recently, had no jurisdiction whatever, except over Wills of personal estate; and the Common Law Courts, had cognizance over Wills of real estate.
It may be, therefore, said, as a rule of law, alike applicable, in this country and in England, that the lex loei rei sitae, governs in cases of immovable*, or real property; and the lex domicilii, in cases of movable or personal property.
In this State, our local laws have been somewhat variant from the general doctrine. By the Act of 1809, ch. 121, Car. & Nich., 78, an administrator, or an executor, who had obtained letters of administration or letters testamentary in any one of the United States, or Territories, was authorized, upon presenting his letters — whether administrative or testamentary— authenticated according to the Act of Congress, to *71 sue, in his represented capacity, in any Court in this State, in the same manner as if such letters had been granted by the Courts of Tennessee.
The Act of 1823, ch. 31, which as we have shown, was carried into the Code, did not repeal the Act of 1809; hut it was continued in force and effect until the passage of the Act of 1840, ch. 131; Nich. Suppliment 160; Smith vs. Maberry, 7 Yer., 26; Allsup vs. Allsup, 10 Yer., 283.
True, a foreign executor or administrator, could not he sued in the Courts of this State, in virtue of his foreign letters testamentary, or of administration; hut under the Act of 1809, he could sue and collect assets, and go hence without account, unless, indeed, they might, while in transitu, he detained in some manner hy the domestic creditors.
Now, since the repeal of the Act of 1809, hy the Act of 1840, what construction is to he given to the Act of 1823, which is brought forward, and incorporated into the Code, at secs. 2182 to 2192 ? We have no direct adjudication upon this statute, involving the precise point raised in this case. Is a foreign Will, after probate in the State where it was published, when brought here, open under our laws, to contestation and re-probate ?
The answer to this question involves the consideration, of the effect of a foreign probate; and especially the effect of the probate of the Will in question, before the “Register of Wills” in the State of Pennsylvania. As a general rule of law, the judgment of a probate Court, allowing proof of a Will, and admtting it to *72 probate, is in the nature of a proceeding in rem— that is, an adjudication pronounced, (as its name imports,) upon the statutes of a particular subject matter, by a tribunal having competent authority for that purpose, and therefore binding and conclusive upon the rights of all persons interested in the property to be administered, though they are not named as parties. Redfield on Wills, part 2, pp. 55-6, and note 9, and numerous authorities there cited. Also, Creppon vs. Dexter, 13 Gay’s R., 330; 2 Smith’s Leading Cases, 490 ; Pallan’s Ex’rs vs. Allison et al.; 7 Hum., 320; 1 Yer., 349.
To have such effect, it is obvious the tribunal in which the Will was admitted to probate, must have competent authority In the case under consideration, as we have seen, the Will was proven, before the “Register of Wills,” in the City and County of Philadelphia. The “ Register of Wills,” by the laws of Pennsylvania, is .a judicial officer, and the fifth section of the Act, creating the office of “ Register of Wills,” in the State of Pennsylvania, and defining his powers and duties, declares, that, “Every Register, qualified to act as aforesaid, shall have jurisdiction within the County for which he shall have been appointed, of the probate of Wills and Testaments, of the granting of letters testamentary, and of administration ; of the passing and filing the accounts of executors, administrators and guardians; and of any other matter whereof the jurisdiction shall be annexed to his said office; and the act of any Register in any matter whereof another Register has the exclusive jurisdiction, shall be void and of no effect.” Purdon’s Digest, 706, *73 and note X. See also, Title, Decedent’s Estates, same Book, 187.
By tbe nineteenth section of this Act, the Register of Wills, and the Judge of the Court of Common Pleas of any county, or any two of the said Judges, are authorized to compose and hold, from time to time, as occasion may require, the Register’s Court of such county; and, when convened according to law, such Court is vested with plenary power, and jurisdiction, to do and perform all such judicial acts, in matters lawfully brought before it, as belong to the office of Register of Wills. To this tribunal, by the twentieth section of the Act, appeals lie from all judicial acts and decisions of the several Registers: Provided, they are pronounced within the term of three years.
Thus, it is apparent, without drawing more particu-lary and at large, from the Act itself, that the tribunal, before which the Will in question was admitted to probate, had full power and jurisdiction to take the probate of Wills, and to issue letters testamentary thereon. Now, what is the effect of the judgment of probate, in the State of Pennsylvania, when certified according to the Act of Congress, in this State? Under our statute, is it to be disregarded, and open in the Courts of Tennessee to re-probate, and contestation? We think, clearly, not. It is established beyond all controversy, both in this country, and in England, that the jurisdiction of Probate Courts, being exclusive in regard to all matters ‘pertaining to the settlement of estates of deceased persons, the decrees of such courts, upon the probate of Wills, and issuing letters testamen *74 tary, as well as of administration, are absolutely unimpeachable and conclusive in all other Courts, both in law and equity. “And such decrees,” says Mr. Red-field on Wills, part 2, p. 47, “ cannot be impeached, even by showing fraud, except by a petition to the Court rendering the decree, who may annul, or modify the same. It cannot, therefore, be shown, collatterally, that another person was appointed executor, or, that the testator was insane, or that the Will was a forgery.” Archer vs. Mosse, 2 Vernon, 8; Plume vs. Beale, 1 P. MS., 388; 1 Williams on Exr’s, 477. See also, 2 Redfield on Wills, p. 55, sec. 9, and notes.
It is admitted that the language of sec. 2190, of our Code, is peculiar, but no fair construction of the whole article upon the subject of foreign Wills, admits of any other reasonable interpretation. To hold, that this section opens the whole question of probate de novo, would be to deny to the preceding sections of the same article, all validity; for, they provide, as has already been shown, that where any foreign Will hag been proven, according to the laws of this State, in a Court, or Territory of the United States, or before the Mayor of any City, any person interested, may present a copy thereof, duly authenticated, to the County Court of any county in the State, where the land, or estate devised or disposed of by Will, is situated, and thereupon, such Court may order the same to be filed and recorded; and said copy, when so recorded, shall have the same force and effect as if the original had been executed in this State, and proved and allowed in the Courts of this State.
*75 It is plain, that the statute does not contemplate that a foreign Will, when proven, according to the laws of this State, and brought here to be executed, shall again be re-probated before the executor is authorized to act under it. It must be “filed and recorded;” and when this is done, it has the same force and effect as if the original Will had been executed in this State. How is this section to be understood, if any one interested — as it is provided by sec. 2190 — to contest the validity of the Will, may do so in the same manner as though it had been originally offered for probate here? It is difficult to reconcile these two sections; and to give the latter the construction contended for, would be to defeat the foreign probate, fully recognized in the former section, altogether. The Legislature, we apprehend, never intended any such construction to be placed upon it; and we do not feel authorized to give it such interpretation. It must be construed in such a manner, if possible, as to give all its parts an intelligent meaning, so that they may stand in harmony with each other, rather than one part in conflict with another. To do this we feel constrained to hold, that the distinction between Wills of real property and Wills ,of personal property, must be maintained, and the right conferred by sec: 2190, of our Code, to contest in the Courts of this State, the validity of Wills probated in a foreign State, limited to Wills of real or immovable property.
We have seen in Wills of real or immovable property, the lex loei rei sitae, governs; and the descent of real property, as well as the devise of it, are governed *76 exclusively by the law of the place where such property is situated; and this, for the wisest reasons; for it would not comport, either with the dignity, independence, or safety of any independent State, or nation, that these incidents should be liable to be affected in any manner, by the legislation, or decisions of the Courts of any State or nation besides itself. Hence, it follows, that a Will of real property, although executed in a foreign State, to be operative in this State, by the express language of the statute, must be proven according to our laws. And, if such Will shall be admitted to probate, in the State where made, according to the forms of our law, and a duly authenticated copy brought here, and recorded and registered in the county where the land disposed of by it, lies, it has the same force and effect, as if the original will had been executed in this State. But, it may be primarily proven here, without first resorting to the Probate Court in the State where it was executed; and in either event, by sec. 2190, any person interested, to contest the validity of such Will may do so as though it had been originally presented for probate in the County Court where the real estate conveyed by it, is situated.
But it is far otherwise, as we have shown in Wills of personal, or movable property. Such property is presumed to follow the person of its owner, and hence, the lex domieilii governs. The books everywhere recognize this doctrine; and Judge Story, in the case of Tompkins vs. Tompkins, 1 Story’s R., 547, has so appropriately presented this whole doctrine, that we have taken the liberty of making the following extract *77 from his opinion. After giving the rule in relation to real property, he says: “But it is otherwise in cases of personal property. The sentence, or decree of the proper Ecclesiastical Court, as to the personal estate, is not any evidence, but is conclusive of the validity, or invalidity of the Will; so that the same question can not be re-examined or litigated in any other tribunal. The reason is, that it being the sentence or decree of a Court of competent jurisdiction, directly upon the very subject matter in controversy, to which all persons who have any interest, are, or may make themselves parties, for the purpose of contesting the validity of the Will, it necessarily follows that it is conclusive between those parties. Eor, otherwise, there might be conflicting sentences, or adjudications, upon the same subject matter, between the same parties; and thus, the subject matter be delivered over to interminable doubts; and the general rules of law, as to the effect of res judicata, be completely overthrown. In short, such sentences are treated as of the like nature as sentences or proceedings in rem, necessarily conclusive, upon the matters in controversy, for the common safety and repose of mankind.” “This doctrine,” says the learned Judge, “was fully considered and established, in the great case of the Duchess of Kingston, before the House of Lords, 11 Hag., State Trials, 261, S. C.; 20 Howell’s State Trials, 538, when Lord Chief Justice De Grey, declared the opinion of all the Judges. It has, also, on various occasions, been considered and recognized in the Supreme Court of the United States, and, especially, in Croudsen vs. Leonard, 4 Cranch R., *78 434; The Mary, 9 Cranch R., 126; Gilston vs. Hoyt, 3 What. R., 246; Armstrong vs. Lear, 12 What. R., 169; Elliott vs. Piersol, 1 Peters’s R., 338, and Thompson vs. Tome, 2 Peters’s R., 157.”
We recognize the principles of this case as controlling the question under consideration; and as established law, sustained by an overwhelming weight of authority, and in perfect harmony with the structure of our Government. Any other doctrine would be at war with the national comity, that everywhere prevails between independent States, and Nations, if not in conflict with the Constitution of the United States, which requires that the acts and judicial proceedings in one State, shall be respected in the courts and tribunals of others: Article 4, sec. 1, Constitution U. S.; Creppen vs. Dexter, 13 Gray’s R., 330; Christmas vs. Russell, 5 Wal., 298.
It follows, therefore, that, so far as the Will in question purports to dispose of personal property, the Probate Court of the domicil of the testatrix had the exclusive jurisdiction to decide upon its validity or un-validity as a Will of personal property; and, as such, it was not open for contest in the Courts of Tennessee. The judgment or decree of the “Register of Wills,” being a tribunal of competent jurisdiction, and in the nature of a proceeding in rem, is necessarily conclusive and binding upon all persons interested in the property to be administered, until the same is reversed, annulled or set aside, by a proper proceeding in the judicial tribunals of the domicil of the testator.
As to the effect of the judgment of the Circuit *79 Court of Davidson County upon tbe issue of devisavit vel non, which is incidentally referred to in the answers of the defendants, we do not feel called upon to say more than to remark, that it cannot be held to vacate the judgment of probate in the court of Pennsylvania, so far as the Will assumes to dispose of the personal property of the testatrix. What its effect might be as a Will conveying real estate in Tennessee, we need not now determine, as the record of that case is not before us in this proceeding, in any such form as enables us to pass upon the validity or unvalidity of that judgment.
2d. There can be but little doubt as to the domicil of the testatrix, at the time of her death. The proof shows that she was born and raised in the State of Tennessee; but it is equally apparent that her husband was a resident of Pennsylvania at the time of his marriage; and in such a case, the domicil of the husband draws to it the domicil of the wife. Mulierem, quamdiu nupta est, incolam ejusdem eivitatis videri, cujus maritus ejus est: Story’s’ Confl., sec. 46, 198.
True, the husband is shown to have been in the Army of the United States, when he was married; but the fixed residence of his parents was in the City of Philadelphia, which he does not appear to have abandoned animo manendi. He had no other fixed domicil than the home of his parents; and, although the record shows he had a floating intention after his marriage, to locate in Tennessee, he does not appear to have carried that intention into execution. The law fixes his domicil in the City of Philadelphia, and he is presumed to hold *80 that domicil until another is obtained; and to constitute a change of domicil, the fact must concur with the intention: Lane, Ex’r, vs. Pardee and Wife, 2 Swan, 232; White vs. White, 3 Head, 404; Allen vs. Thornton, 11 Hum., 536; Foster vs. Hall & Eaton, 4 Hum., 348.
3d. This brings us to the consideration of the third and last proposition insisted on in argument; and that is, whether or not the Circuit Judge erred in refusing to grant a peremptory mandamus to the Judge of the County Court, commanding him to receive and record the certified copy of the Will of the tsetatrix, and to issue letters testamentary thereon.
In England, the writ of mandamus was a highly prerogative writ, issuing in the King’s name from the Court of King’s Bench, and directed to any person, corporation, or inferior jurisdiction within the King’s dominions, requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the Court of King’s Bench had previously determined, or at least supposed to he consonant to right and justice. It was a writ of a most extensively remedial nature, and commonly issued when the injured party had no other remedy; but in some cases, it issued when he had also another, but a more tedious method of redress: 3 Black. Com., 110.
In general, the writ in this country issues under constitutional or statutory regulation; but it has lost but few, if any of its ancient remedial incidents, and is still governed by the common law rules: Kentucky vs. Dennison, 24 Howard, 66. It is as a general principle, resorted to, to prevent disorder from a failure of *81 justice, and will lie in all cases where tbe law has established no adequate specific remedy, and when in justice and good government there ought to be one: Moses on Mandamus, 17, 18.
But the law makes a distinction between ministerial and judicial duties. In the former case, the particular duty imposed may be compelled; while in the latter, a judicial officer, when he fails or refuses to act, can be compelled to proceed and render some judgment in the case before him. But the Court issuing the writ will not direct him how to proceed, or what judgment to render — that is left to his own high sense of duty as a judicial officer. He will be compelled to act — to discharge his duty, otherwise there would be a failure of justice.
In this case, it is insisted on the one hand, that the receiving, filing and recording of the Will under consideration, is merely a ministerial, and not a judicial act; and on the other, that it is a judicial act, from which 'an appeal lies to the Circuit Court.
It is clear,* when an authenticated copy of a foreign Will is presented to the County Court, under our Statute — Code, sec. 2184 — that the ordering it to be filed and recorded, is not a matter of course. The County Judge has. something to do — some legal discretion to exercise. He must determine whether the paper presented, is duly authenticated, according to the Act of Congress; whether the Court in which the Will purports to have been allowed, had jurisdiction; whether there is any estate in his county on which the Will may operate; and if it contains a devise of real estate, *82 whether, under our statute, it has been proven before presentation, according to the laws of this State: Code, sections 2182, 3, 4, 5; also, Croppen vs. Dexter, Gray’s R., 330-333.
It might be, and we think it probable, under the Code, sec. 3147, where the County Court has made and formally entered upon its records, a final judgment or decree, embracing the foregoing points, or such others, if any, as may be lawfully within its jurisdiction, that an appeal would lie from such final judgment or decree, to the Circuit Court. But, in this case, no such final judgment or decree appears to have been entered of record. The existence of the order appears only in the petition and answers of the parties. It is said it was afterwards actually entered nunc pro tune, but the record before us does not show the fact; consequently, there was nothing of record, from which the relator could appeal.
But, be this as it may, the order, as set out in the pleadings, and the facts contained in the petition, and admitted in the answers, contain every 'essential fact necessary to authorize the County Court to receive, file and record the authenticated copy of the Will presented, and to issue letters testamentary thereon.
Assuming, therefore, that the County Judge acted as a judicial tribunal, and having found all the facts necessary to a judgment or decree, so that the judgment or decree would be nothing but the conclusion of law upon the facts, the entering up of the proper judgment must b regarded as in its nature, ministerial; and in the absence of any other adequate specific remedy, a mandamus would *83 be tbe proper method of redress: Moses on Mandamus, 50 and 51; Ruel Morse, petitioner, 18 Pick. R., 443; Delany vs. Godden, 12 Grattan’s Va., 266; City of Galena vs. Amy, 5 Wal., 708; and authorities cited.
Now, in this case, without the judgment or decree of the Court, on the record, how would an appeal lie? And if taken, what would the revising tribunal have before it, upon which to pronounce judgment? We apprehend — all other questions out of the way — it could do nothing but dismiss the appeal.
It. follows, therefore, from a review of the whole case, that the judgment of the Circuit Court must be reversed, and a peremptory mandamus awarded.